IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-10100 |
| | ) | |
| LUELLA CRAYTON and | ) | |
| ANTON HALL, | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE TO MOTION TO SUPPRESS EVIDENCE

Now comes the United States of America by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Bradley W. Murphy, Assistant United States Attorney for the Central District of Illinois, and in response to defendants' Motion to Suppress Evidence, states as follows:

I.  Factual Background

A.  On October 25, 2006, a confidential source (CS) advised that he/she had purchased crack cocaine from Luella Crayton and her boyfriend "Cocky". The CS agreed to assist the agents and made recorded phone calls to Crayton, agreeing to purchase eight ounces of crack cocaine. Arrangements were made for the transaction to occur at the Walgreen's Store at the corner of Knoxville and McClure in Peoria. Surveillance was commenced at 606 E. Forrest Hill and

agents observed "Cocky", later identified as Anton Hall, leave in a van and drive to the Franciscan Center. Hall was observed going into the center. An agent stayed at that location to watch any further movements by Hall.

    B. Later, Crayton left the residence and drove directly (approximately nine blocks) to the Walgreen's parking lot where she parked next to the CS vehicle. She was followed by surveilling agents and when detained was found to possess eight ounces of crack cocaine in her vehicle. She was then arrested. Surveillance was continued on the residence at 606 E. Forrest Hill as agents began drafting complaints for a search warrant at that address.

    C. While agents waited for the search warrant to arrive, a vehicle came to the residence and individuals started to come and go from the house. The agents detained them, finding that the driver claimed to be a relative who was picking up some of the children from the residence. The agents explained that they were securing the residence for a search and permitted some of the children to enter the residence and retrieve articles of clothing in the presence of an agent. The vehicle and the children departed and the surveillance continued.

    D. Later, the search warrant arrived and the search of 606 E. Forrest Hill commenced. In a bedroom, agents recovered two handguns and 2 ½ ounces of crack cocaine.

E. After the search warrant was executed, and items seized, agents went to the Franciscan Center to locate Hall. He came out and entered his van briefly, carrying a bag to a nearby car and entering the front passenger door. The vehicle drove away and was stopped by a marked squad car. Hall was placed under arrest. A search of his person revealed $815 and another $4,000 was located in a gym bag on the back seat of the vehicle.

F. Hall was advised of his Miranda warnings and waived them, admitting that the crack cocaine found in the residence at 606 E. Forrest Hill was his crack. He also claimed that the two handguns were in the house when he moved to the residence.

II.    Analysis

A. Both defendants complain only of the stop and detention without just cause, and the search that ensued. Neither complain of the search of the residence. Hall does not complain of any defect in the taking of his statement. Both motions should be denied for the reasons that follow.

B. Crayton: The agents had a reasonable suspicion that Crayton was in possession of crack cocaine with intent to deliver it to the CS. This suspicion was based on facts articulated as follows:

    a.    Crayton had agreed in a recorded phone call to sell crack

    cocaine, which she had been reported by the CS to have done in the recent past; and

  b. Crayton left her home and drove directly to the location (Walgreen's) she had chosen to make the delivery; and

  c. When she arrived, she parked next to the CS vehicle; and

  d. When agents approached her, she was seen in possession of a bag large enough to contain eight ounces of crack cocaine.

 C. <u>Hall</u>: The agents had a reasonable suspicion, if not probable cause, that Hall was in possession of crack cocaine with intent to deliver it. This suspicion was based on facts articulated as follows:

  a. See subparagraphs a through d of paragraph B above; and

  b. Hall had left his residence which was searched and found to contain 2 ½ ounces of crack cocaine and weapons; and

  c. When detained, he had $4,815 under his control; and

  d. Hall was reported to have sold crack cocaine to the CS in the recent past.

III. <u>Conclusion</u>

 A. The defendants' Motion to Suppress Evidence should be denied.

 B. The agents had reasonable suspicion to stop and detain each defendant.

*See Terry v. Ohio*, 392 U.S. 1, 21 (1968). In the case of Anton Hall, the police had probable cause to arrest him as well. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). The search of his gym bag was incident to his arrest. *See New York v. Belton,* 453 U.S. 454, 462-63 (1981).

        Respectfully submitted,

        UNITED STATES OF AMERICA

        RODGER A. HEATON
        UNITED STATES ATTORNEY

        **s/: BRADLEY W. MURPHY**
        BRADLEY W. MURPHY
        Assistant United States Attorney
        One Technology Plaza
        211 Fulton Street, 4th Floor
        Peoria, Illinois 61602
        Telephone: 309.671.7050

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 27, 2007**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Louise Natonek, Attorney at Law and Hugh Toner, III, Attorney at Law.**

        **s/: Kim Ritthaler**
Kim Ritthaler
Legal Assistant
Office of the United States Attorney
One Technology Plaza
211 Fulton Street, 4th Floor
Peoria, Illinois 61602
Telephone: 309.671.7050